UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DAVID L. JAMERSON,

                  Plaintiff,                        Case No. 2:22-cv-40

v.                                          Honorable Paul L. Maloney

KRISTOPHER TASKILA et al.,

                  Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 7.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims with prejudice for failure to state a claim and will dismiss Plaintiff's state law claims without prejudice. Plaintiff's motion for the appointment of counsel will be denied.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and the following AMF officials: Warden Kristopher Taskila; Acting Deputy Warden C. Dums; Resident Unit Manager (RUM) Lance Miller; Corrections Officers Unknown Laroux and Cody Haataja; Case Manager Ronald Niemi; and Grievance Coordinator T. Hamel.[1]

In Plaintiff's complaint, he alleges that on December 31, 2021, he "stayed in the bunk" rather than going for a shower and breakfast because he does not "get up for breakfast on days" that Corrections Officer Haataja works. (Compl., ECF No. 1, PageID.5.) Corrections Officer Haataja then came to Plaintiff's cell and said to Plaintiff, "sissy, do you want to wash your pussy?" (*Id.*) Plaintiff contends that Corrections Officer Haataja's "vulgar language" was "meant to defame and slander the Plaintiff's reputation." (*Id.*, PageID.7.) Plaintiff further contends that Corrections Officer Laroux witnessed this incident, but "did not report it." (*Id.*, PageID.5.)

On January 6, 2022, while Case Manager Niemi was conducting legal mail rounds, Plaintiff told Niemi that "he had [a] staff-on-prisoner sexual harassment complaint to report against Haataja" for the statements Haataja made on December 31, 2021. (*Id.*) Case Manager Niemi told

---

[1] When listing his "Legal Claims" in the complaint, in addition to the Defendants listed herein, Plaintiff also includes a claim against "AMF-Assistant Psychology-Haryu." (Compl., ECF No. 1, PageID.9.) Specifically, Plaintiff claims that "AMF-Assistant Psychology-Haryu failed to act appropriately after [Plaintiff] gave him two sexual [h]arassment complaints on two different occasions," which violated Plaintiff's rights under the Eighth and Fourteenth Amendment. (*Id.*) However this individual is not listed as a Defendant in the case caption and Plaintiff does not make any reference to this individual when setting forth the facts of the case. To the extent that Plaintiff intended to name Haryu as a Defendant, for the same reasons set forth herein, Plaintiff fails to state a claim against Haryu upon which relief may be granted.

Plaintiff that he did not believe him. (*Id.*) Plaintiff then gave Case Manager Niemi a "complaint addressed to the Grievance Coordinator requesting a Step-One [grievance]" pursuant to the "Prisoner Grievance Modified Access [policy]." (*Id.*, PageID.5–6.) Plaintiff contends that Case Manager Niemi "refused to report the complaint, and refused to mail it to the Grievance Coordinator." (*Id.*, PageID.7.) As a result of this, Plaintiff alleges that Case Manager Niemi prevented him "from obtaining a Step-One grievance form." (*Id.*)

On January 13, 2022, Acting Deputy Warden Dums and RUM Miller conducted rounds, and Plaintiff told Dums that he had a "sexual harassment of staff-on-prisoner" claim to report because Case Manager Niemi had refused to process Plaintiff's complaint. (*Id.*, PageID.6.) Plaintiff gave two letters to Acting Deputy Warden Dums—one addressed to Warden Taskila and one addressed to the AMF grievance coordinator—complaining about Case Manager Niemi's failure to process his grievance and Corrections Officer Haataja's sexually harassing comments. (*Id.*)

By January 21, 2022, Plaintiff had not received a response to either of his letters, and he asked RUM Miller why Acting Deputy Warden Dums had not delivered his letters. (*Id.*) RUM Miller "walked away without answering [Plaintiff's] question." (*Id.*) Thereafter, on January 27, 2021, RUM Miller told Plaintiff that Acting Deputy Dums had given him one of Plaintiff's letters and he had forwarded it to the grievance coordinator, who in turn forwarded it to the Prison Rape Elimination Act (PREA) coordinator. (*Id.*) Plaintiff claims that the AMF grievance coordinator "refused to send a Step-One grievance form so [he] could grieve" Acting Deputy Dums for not giving Plaintiff's letter to the grievance coordinator on January 13, 2022, as Plaintiff had requested that he do. (*Id.*, PageID.8.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. (*Id.*, PageID.8–10.) Plaintiff also avers that Defendants violated his rights under state law and MDOC policy. As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief. (*Id.*, PageID.10–11.)[2]

## II.     Motion for the Appointment of Counsel

Plaintiff has filed a motion for the appointment of counsel. (ECF No. 4.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion for the appointment of counsel (ECF No. 4) therefore will be denied.

---

[2] The Court notes that Plaintiff attached several exhibits to his complaint, including an affidavit. The affidavit addresses some of the events giving rise to Plaintiff's claims in his present complaint, but the affidavit also addresses events that are not set forth in the complaint. The Court looks to Plaintiff's complaint for the claims that he raises in this action. To the extent that Plaintiff wishes to present any claims regarding the additional events that are set forth in the affidavit, but which are not set forth in the present complaint, Plaintiff is free to do so in a new action.

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Washington and Taskila

Plaintiff names MDOC Director Washington and AMF Warden Taskila as Defendants; however, Plaintiff fails to present any specific factual allegations against Defendants, other than to claim that they are involved due to their supervisory positions. Specifically, Plaintiff alleges that "Defendant Washington knew or should [have] known of [Defendant] Haataja's propensity of sexually harassing Plaintiff . . . which is prohibited by law and policy, yet failed to correct the illegal misconduct as the [c]hief [a]uthority overall." (Compl., ECF No. 1, PageID.10.) Further, Plaintiff alleges that despite receiving sexual harassment complaints about Defendant Haataja, Defendant Taskila "fail[ed] to correct the misconduct[] and encourage[ed] the continuation of the misconduct." (*Id.*, PageID.9.)

Government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff alleges in a conclusory manner that Defendant Taskila "fail[ed] to correct the misconduct[] and encourage[ed] the continuation of the misconduct" despite receiving "a dozen sexual harassment complaints against Haataja." (Compl., ECF No. 1, PageID.9.) It is unclear from Plaintiff's allegations whether he sent the referenced complaints to Defendant Taskila or whether other inmates did so. Further, it is unclear whether the "dozen" complaints were about the one incident with Defendant Haataja on December 31, 2021, or whether the complaints were about different incidents. Such conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

In sum, Plaintiff fails to allege any *facts* showing that Defendants Washington and Taskila encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly

acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendants Washington and Taskila engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

### B. First Amendment

Plaintiff alleges that Defendants violated his First Amendment right to petition government and to access the courts when his grievances were not forwarded to the grievance coordinator and were not processed. (*See* Compl., ECF No. 1, PageID.10.)

Plaintiff's right to petition government is not violated by Defendants' failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress

8

of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Furthermore, based on the allegations in Plaintiff's complaint, it appears that he was on modified grievance access during the time period relevant to this suit. (*See, e.g.*, Compl., ECF No. 1, PageID.5.) To the extent that Plaintiff intended to claim that his placement on modified grievance access violated his First Amendment rights, such placement does not violate a prisoner's rights under the First Amendment. As discussed above, Plaintiff had other means of exercising his right to petition government for redress of grievances, and this is underscored by his *pro se* invocation of the judicial process. *See Griffin*, 563 F. App'x at 415–16; *see also Azeez*, 568 F. Supp. at 10.

Additionally, a prisoner's placement on modified grievance access does not prohibit him from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445–47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules

regarding the filing of grievances. *See* MDOC Policy Directive 03.02.130 ¶ MM (eff. Mar. 18, 2019). Moreover, if a prisoner submits a grievance obtained from a source other than the Step-I grievance coordinator, the grievance coordinator may reject the grievance, in accordance with ¶ J of the policy. *Id.* ¶¶ J(3), MM. As with any grievance rejection under ¶ J, the prisoner may appeal the rejection to the next step of the grievance process. *Id.* ¶ I. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past.

Finally, to the extent that Plaintiff complains about any Defendant's failure to provide him with satisfactory responses to his grievances, the First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple*, 183 F.3d at 479.

Therefore, Plaintiff fails to state a cognizable First Amendment claim, and his First Amendment claims will be dismissed.

### C.    Eighth Amendment

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment when Defendant Haataja made a sexually harassing comment, Defendant Laroux failed to report the incident, and the remaining Defendants failed to process his sexual harassment complaints and grievances about the incident with Defendant Haataja. (Compl., ECF No. 1, PageID.5–9.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the

"minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."

*Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff alleges that on December 31, 2021, which was "shower day" for Plaintiff's unit, Defendant Haataja asked him, "sissy, do you want to wash your pussy?" (Compl., ECF No. 1, PageID.5.) Plaintiff contends that Defendant Laroux was "about six feet behind Haataja" when Haataja made this comment, and despite witnessing this "sexual harassment incident," Defendant Laroux did not report it. (*Id.*) Plaintiff also contends that thereafter he tried to report this incident by filing complaints and grievances, but Defendants refused to process his complaints and grievances. (*See id.*, PageID.5–7.)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey*, 832 F.2d at 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

12

Further, the Sixth Circuit has joined multiple other courts to conclude that even incidents of sexual touching coupled with sexual remarks do not rise to the level of an Eighth Amendment violation so long as the offensive conduct was "isolated, brief, and not severe[.]" *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1095 (6th Cir. 2019) (quoting *Jackson v. Madery,* 158 F. App'x 656, 662 (6th Cir. 2005)); *see also, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson*, 158 F. App'x at 661 (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards).

However, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is distinguishable from Plaintiff's claim against Defendant Haataja. Here, in Plaintiff's complaint, Plaintiff alleges that on a specific date, Defendant Haataja made one "vulgar" and sexually harassing comment when he asked if Plaintiff was going to shower that day. (Compl., ECF No. 1, PageID.5, 9.) As alleged in Plaintiff's complaint, Plaintiff's singular interaction with Defendant Haataja differs from the repeated interactions between the plaintiff and

defendant in *Rafferty*.[3] Further, nothing in the complaint suggests that Defendant Haataja physically touched Plaintiff.

Under these circumstances, Defendant Haataja's remark, which was made on one occasion, while offensive, does not evidence the sort of repeated, coercive sexual demands at issue in *Rafferty*. As a result, the alleged sexual harassment falls short of the severity necessary to state an Eighth Amendment claim. *See Rafferty*, 915 F.3d at 1095–96. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Haataja will be dismissed.

With respect to Plaintiff's allegation that Defendant Laroux failed to report the December 31, 2021, incident between Plaintiff and Defendant Haataja despite witnessing it, although a defendant may be liable under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, Plaintiff fails to state such a claim. *Cf. Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (discussing that an officer or other prison official may be liable for another prison official's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring'" (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997))). Defendant Laroux's failure to report the single comment that Defendant Haataja made on December 31, 2021, does not suggest that Defendant Laroux knew of, and disregarded, an excessive risk of harm to Plaintiff. *See Farmer*, 511 U.S. at 837. Likewise,

---

[3] Although Plaintiff makes a conclusory allegation that the Warden at AMF has received "a dozen sexual harassment complaints about Haataja," as discussed above, it is unclear whether Plaintiff himself submitted all of these complaints, whether the "dozen" complaints were about the one incident with Defendant Haataja on December 31, 2021, or whether the complaints were about different incidents. Regardless, such conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Plaintiff's claims that the remaining Defendants failed to process his sexual harassment complaints and grievances about the incident with Defendant Haataja do not show that these Defendants knew of, and disregarded, an excessive risk of harm to Plaintiff, as is required to state an Eighth Amendment claim.

Accordingly, for the foregoing reasons, Plaintiff's Eighth Amendment claims will be dismissed.

### D.    Fourteenth Amendment

Plaintiff also alleges that Defendants violated his Fourteenth Amendment due process rights. (*See* Compl., ECF No. 1, PageID.9.)

To the extent that Plaintiff intended to allege that Defendants violated his due process rights by failing to process his grievances, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, to the extent that Plaintiff intended to raise a substantive due process claim regarding Defendants' actions, he fails to state such a claim. "Substantive due process 'prevents

the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments apply to protect Plaintiff's right to petition the government and to be free from cruel and unusual punishment. *See supra* Part III.B–C. Furthermore, nothing in the complaint suggests that Defendants engaged in the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claim is subject to dismissal.

Accordingly, for all of these reasons, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

### E.   State law claims

Plaintiff alleges that Defendant Haataja "defame[d] and slander[ed]" his reputation. (Compl., ECF No. 1, PageID.7–8.) Plaintiff also suggests that Defendants violated MDOC policy. (*See id.*, PageID.8.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Further, Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton*, 27 F.3d at 1164. Plaintiff's assertion that Defendant Haataja or any other Defendant violated state law or MDOC policy therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over state law claims, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern

over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

### Conclusion

Plaintiff's motion for the appointment of counsel (ECF No. 4) will be denied. Furthermore, having conducted the review required by the Prison Litigation Reform Act, the Court determines that all of Plaintiff's claims in the complaint will be dismissed. Plaintiff's federal claims will be dismissed with prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, Plaintiff's state law claims against Defendants will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and a judgment consistent with this opinion will be entered.


Dated:   __June 1, 2022__                        __/s/ Paul L. Maloney__
                                                 Paul L. Maloney
                                                 United States District Judge